**Luise LIGHT, Appellant,**

v.

**Isabel WOLF.**

No. 85–5903.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 25, 1986.

Decided April 17, 1987.

Michael Jeffrey Kator, with whom Irving Kator, Washington, D.C., was on the brief for appellant.

Mary Coster Williams, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence and Michael Ryan, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before BORK and BUCKLEY, Circuit Judges, and HAROLD H. GREENE,[*] District Judge.

Opinion for the Court filed by District Judge HAROLD H. GREENE.

HAROLD H. GREENE, District Judge:

This case concerns the proper method of service of process on a federal official who is being sued, ostensibly in her individual capacity, for activities that might actually fall within the scope of her official duties. More specifically, the question is whether in that situation service upon the individual alone is sufficient, or whether, as the District Court held, service on the United States is also required. Because we conclude that under the circumstances of this case service on the defendant alone did not meet the requirements of Rule 4(d)(5) of the Federal Rules of Civil Procedure, we affirm the order of the District Court quashing service and dismissing the action.[1]

I

In August 1983, appellant Luise Light was Director of the Nutrition Guidance and Educational Research Division of the United States Department of Agriculture (USDA), working under the supervision of appellee Isabel Wolf. During that period, appellant negotiated with the American Heart Association (AHA) to provide services for one of the AHA's publications. According to appellant, she had received a firm offer of a contract from the AHA when appellee contacted that organization and "raised questions about the propriety of my conduct and inferred that USDA would be displeased with AHA if they concluded arrangements with me."[2] AHA thereupon withdrew its contract offer, and

---

[*] Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Appellant also argues that the District Court improperly stayed discovery pending resolution of her motion to dismiss. Because we hold that appellant failed to effect proper service, we need not decide that issue. We note, however, that review of a District Court's discovery order does not turn on "fundamental fairness," as appellant argues, but rather on whether that court abused its discretion in the application of Rule 26(c), Fed.R.Civ.P. *See, e.g., In re Surety Association of America,* 388 F.2d 412 (2d Cir. 1967).

2. Appellee's Supplemental Appendix at 10.

appellant brought suit against appellee for slander and tortious interference with contract.

Pursuant to Rule 4(d)(1), appellant served a copy of the summons and complaint on appellee by certified mail to the latter's residence in the District of Columbia. However, she did not also serve the United States, and it is that failure that led to the present controversy. On May 17, 1984, the United States Attorney moved on behalf of appellee to stay discovery and to dismiss the action or to quash service of process. The District Court granted the stay motion, and subsequently it ordered that service of process be quashed and the action be dismissed. This appeal followed.

## II

Rule 4(d)(5) of the Federal Rules of Civil Procedure governs the service of process upon federal officials. The rule provides that "[s]ervice shall be made ... [u]pon an officer ... of the United States, by serving the United States and by sending a copy of the summons and of the complaint by registered or certified mail to such officer...." Service upon the United States is, in turn, governed by Rule 4(d)(4). That rule requires "deliver[y of] a copy of the summons and complaint to the United States Attorney for the district in which the action is brought" and the mailing of a copy of these papers by "registered or certified mail to the Attorney General of the United States...." [3] Service of process upon individuals, on the other hand, is governed by Rule 4(d)(1), which requires

> deliver[y of] a copy of the summons and of the complaint to [the individual] personally or by leaving copies thereof at his dwelling house or usual place of abode ... or by deliver[y of] a copy of the summons and of the complaint to an

agent authorized by appointment or by law to receive service of process.

The controversy before us raises an issue that is simply stated but does not have an obvious answer: which of these rules applies when a plaintiff frames his complaint against a federal official as a private action but that complaint at least arguably implicates the official activities of the defendant?

The government [4] correctly points out that Rule 4(d)(5) draws no explicit distinction between suits against a federal officer in an official capacity and those brought against such an officer in his or her private capacity; the rule simply refers to service "[u]pon an officer ... of the United States." [5] But that argument proves too much.

The Federal Rules of Civil Procedure, like any statute, must not be interpreted woodenly when the literal language leads to absurd results, and on this basis courts have long recognized that Rule 4(d)(5) service is not required with respect to "actions brought against persons who just happen to be, or to have been, federal officials." *See Relf v. Gasch*, 511 F.2d 804, 808 n. 18 (D.C.Cir.1975); *Lawrence v. Acree*, 79 F.R.D. 669, 671 (D.D.C.1978). If, for example, the head of a federal agency is being sued by an individual who tripped and fell on an obstacle negligently maintained on the official's private lawn, then obviously service to the United States Attorney under Rule 4(d)(5) is not required; there must be some connection between the lawsuit and the federal government before such service is required. As a leading commentator has noted, "Rule 4(d)(5) applies only if the action is in substance one against a federal officer or agency in its official capacity." J. Moore, *Moore's Federal Practice* ¶ 4.29 at 4–240 (1986).

---

**3.** In an action attacking an order of an officer or agency of the United States not made a party, a copy of the summons and complaint must also be sent by registered or certified mail to that officer or agency.

**4.** The Department of Justice represents appellee on this appeal, and it also represented appellee in District Court.

**5.** The government is also correct in contending that compliance with Rule 4(d)(5) is mandatory. *See Sanchez-Mariani v. Ellingwood,* 691 F.2d 592, 594 (1st Cir.1982).

### III

Appellant strongly disclaims any connection between her suit and official government business, and indeed the face of the complaint reveals no such connection. Jurisdiction is alleged pursuant to 28 U.S.C. § 1332(a), the federal diversity statute. Appellee's home address but not her official address is listed on the complaint, and the complaint does not reveal on its face that appellee was appellant's supervisor in a federal department or that the actions in question grew out of this employment relationship. In fact, no mention whatever is made of either appellant's or appellee's employment with the federal government. Thus, based solely on the allegations of the complaint, appellant would be correct: this lawsuit would be a purely private dispute, and were we to follow the Third Circuit's dictum in *Micklus v. Carlson,* 632 F.2d 227, 240 (3d Cir.1980), that "[t]he applicable method of service under Rule 4(d) depends upon the theory under which a party proceeds," [6] we would have to rule for appellant.

However, as we see it, in cases of this type the theory that appears from the words of the complaint may tell only half the story, and to allow plaintiff to accomplish service solely on that basis may not further "the interest of doing substantial justice"—the interest which underlies these rules of procedure. *See* C. Wright & A. Miller, *Federal Practice and Procedure* § 1083, at 332–33 (1969). The appropriate

question is not whether the complaint is drafted to portray or to conceal an official connection, but instead whether, as noted *supra,* the action might in substance be regarded as one against a federal officer in his or her official capacity.

The instant case at least presumptively reveals such official substance. As already stated, appellee was appellant's supervisor at the Department of Agriculture. In late 1983, while she was still working for that Department, appellant negotiated and received a contract offer to provide nutrition services for a private foundation. Once appellee learned of these negotiations, she would not have known whether her subordinate was trying to obtain a private contract or an official one; the USDA itself periodically enters into such contracts with private groups.[7] However, whether official or private, the negotiations implicated appellee's duties as a Department of Agriculture administrator.[8] If the contract was to be official, it would have required appellee's approval; if the contract was to be personal, appellant may have been in violation of the Department's conflict of interest regulations.[9]

In light of this connection between the contract offer to appellant, which formed the basis of her claim in the District Court, and appellee's duties to the Department of Agriculture, appellant's portrayal of this action as "purely personal" [10] was mislead-

---

**6.** The court made that statement—which of course was broader than necessary under the facts—in a case which involved a suit for damages against a public official in his individual capacity but where the plaintiff nevertheless failed to effect personal service as required by Rule 4(d)(1). There appear to be no pertinent decisions in any of the other Circuits.

**7.** Appendix at 16.

**8.** That is not to say that appellee's contacts and conversations with the AHA were privileged. That is a matter that could be decided only by substantive motions, assuming first proper service of process.

**9.** These regulations provide, in part, that:
(a) An employee shall not engage in outside employment or other outside activity not ca-

patible with the full and proper discharge of the duties and responsibilities of his or her Government employment whether on his or her behalf, or for private individuals, firms [etc.]. Incompatible activities include ...:
(1) Outside employment or activity ... which may result in, or create the appearance of a conflict-of-interest;

. . . . .

(4) Outside employment or activity which may be construed by the public as official acts of the Department, or of a nature closely paralleling the work of the Department; ...
(c) Except as provided in paragraphs (c)(1) through (c)(4) of this section, employees shall obtain advance approval for outside employment or activity....
7 C.F.R. § 0.735–13 (1986).

**10.** Reply Brief for Appellant at 2.

ing and inaccurate.[11] Thus, as this very case demonstrates, reliance on the allegations of the complaint to sanction purely personal service may effect substantive violations of Rule 4(d)(5).

A requirement of official service in cases such as this is supported also by practical considerations. If a plaintiff is free in effect to determine whether the action is to be treated, initially at least, as a private one, the burden is cast upon the defendant official to contact and to attempt to persuade government counsel to provide the necessary defense. In view of the workload of attorneys in the Department of Justice and the various United States Attorney's Offices, and of the ponderousness of bureaucracies generally, it is likely to be difficult in many instances for the target of a "private" lawsuit to secure representation by government counsel in the early stages of litigation when often crucial tactical decisions need to be made.

On the other hand, the burden on a plaintiff under Rule 4(d)(5) is not an onerous one: all that is required is the delivery of a copy of the summons and complaint to the United States Attorney and mailing to the Department of Justice. Such service will enable and require the appropriate official to determine within the sixty days allowed to the United States for an answer to the complaint whether the defense properly may and will be undertaken by government counsel: such counsel could either decline to become involved, or they could, as here, provide representation to the official on the basis that his or her actions were likely "within the scope of [her] employment." *See* 28 C.F.R. § 50.15. The Department of Justice thus deserved notice of this claim so that it could prepare, or at least decide whether to prepare,[12] for litigation.

Appellant contends that the mere intention of a defendant to raise official immunity as a defense should not suffice to require a plaintiff to serve the United States. That argument misconceives what is here involved. It is not a defendant's assumed intention to raise immunity that requires service pursuant to Rule 4(d)(5); it is what *in substance could be* the official character of defendant's involvement in the lawsuit.[13]

Similarly, while appellant is correct that the mere intonation of the phrase "official immunity" should not be sufficient to require plaintiffs to serve the United States, it is equally true that the intonation of the words "purely private action"—when the action might well be anything but private— should not suffice to allow plaintiffs to evade rules designed to give the appropriate party notice of a pending lawsuit. Under appellant's view, plaintiffs would be encouraged to avoid a possibly applicable defense of immunity by carefully excluding mention of existing official connections from their complaints; government officials might find it more difficult to acquire the assistance of government counsel when they are entitled to it; and, in fact, some justified claims of immunity would fall victim to the "purely private" aura of the suit without the deserved aid of a government attorney.

Most plaintiffs know full well—as plaintiff in this action knew—that the action arose out of a dispute implicating the defendant's official position (whether or not that defendant's activities would ultimately be found to be protected by immunity). For that reason, too, it is not an undue imposition upon plaintiffs to require them in such circumstances to serve the United States, particularly since, as indicated, that

---

**11.** We can understand why a plaintiff would want to depict a lawsuit of this kind as a completely private one, in part by serving only the private individual. After all, federal officials sued for official actions have an opportunity to claim at least qualified immunity from suit, while federal officials sued for purely private actions do not. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). However, a plaintiff's interest in averting an immunity defense should not determine who will be served and who will thus receive notice of the suit.

**12.** Because of the need for making that decision, notice to the Department at this preliminary stage would be just as useful in a doubtful situation as notice in a case that, on its face, plainly implicates official action.

**13.** See note 8, *supra.*

involves only the very light burden of serving a few extra pieces of paper.

Upon a consideration of these factors, we conclude that appellant was obligated to serve the United States in accordance with Rule 4(d)(5).[14] A plaintiff who artfully omits all references to official action or to an official connection between the parties from his complaint, and who decides not to accomplish service under Rule 4(d)(5), will thus be subjected to the risk that his suit will be dismissed or that service will be quashed once the character of the suit is discovered,[15] and properly so. For "[t]he party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." C. Wright & A. Miller § 1083, at 334. *E.g., Rivera v. Nissan Manufacturing Co.*, 788 F.2d 819, n. 2 (1st Cir.1986); *Norlock v. City of Garland*, 768 F.2d 654 (5th Cir.1985); *Lamb v. Volkswagenwerk Aktiengesellschaft*, 104 F.R.D. 95 (S.D.Fla. 1985). Appellant must face the consequences of the choice she made here.

For the reasons stated, the District Court's order quashing service and dismissing the action is

*Affirmed*

---

**14.** It should be understood, however, that we do not hold that service must be made in accordance with that rule whenever a government official is being sued; we only decide that where the lawsuit could be regarded as involving such an officer's official duties—as when there is an employment relationship between plaintiff and defendant—service should conform to the Rule.

**15.** That, too, does not impose an undue burden. Unless the statute of limitations has run in the meantime, plaintiff can usually refile the suit with proper service. Although plaintiff indicated at oral argument that the statute has run in this case, we take no position on that, except to say that, if true, it does not affect our decision.